IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFERY DANA SPARKS,

Plaintiff,

v.

DUSTI HUNTER, KAYCIE THOMPSON, JUDETT ORTIZ, ERIN REYES, and OREGON DEPARTMENT OF CORRECTIONS,

Defendants.

Case No. 2:25-cv-00369-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Jeffery Dana Sparks ("Sparks"), an adult in custody ("AIC") of the Oregon Department of Corrections ("ODOC"), filed this action alleging claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), against Defendants Dusti Hunter ("Hunter"), Kaycie Thompson ("Thompson"), Judett Ortiz ("Ortiz"), Erin Reyes ("Reyes"), and ODOC (together, "Defendants"). The individual defendants are ODOC employees at Two Rivers Correctional Institution ("TRCI") in Umatilla, Oregon. Sparks

alleges that Defendants discriminated against him because of his disability and retaliated against him for filing grievances related to the alleged discrimination. (*See* Compl., ECF No. 1.)

Sparks filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. (Pl.'s Mot. Summ. J. ("Pl.'s Mot."), ECF No. 36.) Defendants responded to Sparks' motion and cross-moved for partial summary judgment. (Defs.' Mot. Summ. J. ("Defs.' Mot."), ECF No. 66.) The Court has jurisdiction over Sparks' claims pursuant to 28 U.S.C. § 1331. For the reasons explained below, the Court grants in part and denies in part Defendants' motion for summary judgment and denies Sparks' motion for summary judgment.

## BACKGROUND

Sparks has been housed at TRCI since June 18, 2020. (Decl. Dusti Hunter Supp. Defs.' Mot. Summ. J. ("Hunter Decl.") ¶¶ 1, 4, ECF No. 68.) Sparks is legally blind. (Pl.'s Exs. Ex. 1, ECF No. 38.)

In July 2021, TRCI staff assigned Sparks an "Assisted Living Aide," AIC Robert Stamper ("AIC Stamper"), to assist Sparks with reading and writing. (*See id.* Ex. 3.) Unit aids assist AICs with activities of daily living but not with work assignments. (Decl. Kaycie Thompson Supp. Defs.' Mot. Summ. J. ("Thompson Decl.") ¶ 4, ECF No. 71.) On May 13, 2022, TRCI staff redesignated AIC Stamper as an "Assisted Living Orderly (ADL2)" to provide Sparks with an "elevated" level of assistance. (Pl.'s Br. Supp. Summ. J. ("Pl.'s Br.") at 1, ECF No. 35; *see also* Pl.'s Exs. Ex. 3.) This assignment was "good for one year" subject to reevaluation. (Pl.'s Exs. Ex. 16.)

Sparks worked in a "floor crew" position at TRCI from July 13, 2021 until March 6, 2023. (*See id.* Ex. 4.) On or about March 5, 2023, Hunter, TRCI's Institution Work Programs ("IWP") Coordinator, removed Sparks from his work assignment when she learned that Sparks required an assistant to help him with daily tasks including bathing, dressing, grooming, and

cleaning his cell. (Hunter Decl. ¶ 5.) Sparks' floor crew work assignment required that he could operate "heavy machinery." (*Id.*) Hunter was concerned that if Sparks required AIC Stamper's one-on-one assistance for daily tasks, Sparks could not safely perform his floor crew job. (*Id.*; *see also* Pl.'s Exs. Ex. 6.)

Upon learning that he had been removed from his work assignment, Sparks submitted an "AIC Communication Form" contesting his removal from the work assignment and requesting reinstatement. (Pl.'s Exs. Ex. 7.) Hunter responded on March 7, 2023, explaining that upon learning of Sparks' assistance needs, she determined it was "not the best safety practice" for him to continue in his floor crew role. (*Id.*) Sparks also reached out to Thompson, TRCI's ADA Coordinator, and Thompson responded that "[w]ork assignments follow[] medical designations to keep you safe." (Thompson Decl. ¶ 1.)

On March 7, 2023, Sparks asked AIC Stamper to help him file a discrimination complaint against Hunter and Thompson. (Pl.'s Br. at 2-3; Decl. Erin Reyes Supp. Defs.' Mot. Summ. J. ("Reyes Decl.") Ex. 1, ECF No. 70.) One of Sparks' supervisors on his work assignment, Sergeant Miller, reported at that time that he was not "concerned" about Sparks' work assignment and that he believed that Sparks "seemed to be ok doing [his] job." (Pl.'s Exs. Ex. 5.)

On April 4, 2023, Ortiz, a TRCI nurse, visited Sparks in his unit and spoke with him about his assistance needs. (Decl. Judett Ortiz Supp. Defs.' Mot. Summ. J. ("Ortiz Decl.") ¶ 4, ECF No. 69.) AIC Stamper explained to Ortiz which tasks he performed for Sparks. (Pl.'s Exs. Ex. 10.) AIC Stamper asked Ortiz if Sparks' ability to clean his own cell would make a difference in reinstating his floor crew work assignment. (*Id.*) Ortiz asked Sparks if he was able to clean his own cell without assistance and Sparks said yes. (*Id.*; Ortiz Decl. ¶ 4.) Sparks told Ortiz that his need for cleaning assistance was limited to cleaning his cell to meet TRCI's

cleanliness requirements. (Ortiz Decl. ¶ 4.) Sparks alleges that Ortiz coerced and threatened him to make those statements to "manufacture a reason to fire [his] ADL2." (Pl.'s Relief Summ. J. at 2, ECF No. 42.)

On April 5, 2023, following Ortiz's visit, Hunter removed AIC Stamper as Sparks' assistant at the "ADL2" level as the result of her reevaluation of Sparks' assistance needs. (Hunter Decl. ¶ 7.) AIC Stamper would continue to assist Sparks in a more limited capacity as an "orderly," consistent with Sparks' lower assistance needs. (*Id.*) When Thompson visited Sparks on April 13, 2023, Sparks reiterated that he does not require assistance with all of the activities previously indicated in his records and that his needs are limited to assistance with writing, reading, and identifying areas missed in cleaning his cell for inspection. (Thompson Decl. ¶ 3; *see also* Hunter Decl. ¶ 6.) On June 2, 2023, Sparks returned to his floor crew work assignment. (Hunter Decl. ¶ 8.)

## LEGAL STANDARDS

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). At the summary judgment stage, the court views the facts in the light most favorable to the non-moving party, and draws all reasonable inferences in favor of that party. *See Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005). The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In determining whether a genuine issue of material fact exists, a court views the evidence in the light most favorable to, and draws all justifiable inferences in favor of, the nonmoving party. *See McNeil v. Sherwood Sch. Dist. 88J*, 918 F.3d 700, 706 (9th Cir. 2019) (per curiam) ("The court views 'evidence in the light most favorable to the nonmoving party,' to determine 'whether genuine issues of material fact exist.'" (quoting *George v. Edholm*, 752 F.3d 1206, 1214 (9th Cir. 2014))); *Brown v. Arizona*, 82 F.4th 863, 874 (9th Cir. 2023) ("When determining whether a genuine issue of material fact exists, [a court] 'must draw all justifiable inferences in favor of the nonmoving party.'" (quoting *Howard v. HMK Holdings, LLC*, 988 F.3d 1185, 1189 (9th Cir. 2021))). In doing so, a "court . . . may not judge credibility, weigh the evidence, or resolve factual disputes[.]" *Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424, 437 (9th Cir. 2023) (citing *Anderson*, 477 U.S. at 255).

Sparks is self-represented and therefore the Court must construe his filings "liberally" and afford him the "benefit of any doubt.'" *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted); *see also Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (noting that district courts are to "construe liberally motion papers and pleadings filed by [self-represented individuals in custody] and should avoid applying summary judgment rules strictly").

## DISCUSSION

### I. DISCRIMINATION CLAIMS

#### A. ADA and Rehabilitation Act Claims

Sparks moves for summary judgment on his ADA and Rehabilitation Act discrimination claims on the ground that Defendants terminated his employment as a floor crew worker because he is legally blind and required an ADL2. (Pl.'s Br. at 5-8.) Defendants cross-move for summary judgment on Sparks' discrimination claims on the grounds that Sparks was not a "qualified

individual with a disability" and there is no evidence in the record that Defendants acted with deliberate indifference in terminating Sparks' position.[1] (Defs.' Mot. at 7-8.)

**1. Applicable Law**

"Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Adom v. Cal. Dep't of Corr. & Rehab.*, No. 24-4756, 2026 WL 2639549, at *5 (9th Cir. Sept. 8, 2026) (quoting 42 U.S.C. § 12132). "State prison operators, . . . fall squarely within the statutory definition of 'public entity.'" *Id.* (citation modified) (quoting *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)).

"To prove that a public entity violated Title II, a plaintiff must show that '(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.'" *Id.* (quoting *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)). "To recover monetary damages for a violation of Title II, the plaintiff must also show that the public entity defendant acted with deliberate indifference." *Id.* (citing *Duvall*, 260 F.3d at 1138). A public entity acts with deliberate indifference if it (1) has "knowledge that a harm to a federally protected right is substantially likely"; and (2) fails "to act upon that likelihood." *Updike v. Multnomah County*, 870 F.3d 939, 950-51 (9th Cir. 2017) (citation modified) (quoting *Duvall*, 260 F.3d at 1138-39).

---

[1] Defendants also argue that Sparks improperly named only the individual defendants in their individual capacities, but Sparks added a note "see attached" in his complaint's caption and clearly named ODOC as a defendant in the referenced attachment. (*See* ECF No. 1-3 at 1-2, 12.)

Because Title II of the ADA was modeled on Section 504, *see Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999), courts analyze the two statutes together and "the elements of a valid Title II claim do not differ in any material sense from those of a valid section 504 claim and the two may be addressed together." *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016).

**2. Analysis**

The Court concludes that a reasonable juror could find that ODOC acted with deliberate indifference by removing Sparks from his floor crew job because of his blindness and a reasonable juror could alternatively find that ODOC removed Sparks from his position in light of legitimate safety concerns and did not act with deliberate indifference.

Specifically, although ODOC now challenges whether Sparks was qualified to perform his job in light of his disability (Defs.' Mot. at 7), there is no dispute that Sparks ably performed his floor crew job without incident until Hunter removed him from the job. In addition, there is no dispute that ODOC reinstated Sparks to the same position despite no improvement in his eyesight. Further, the record reflects that Hunter took issue with the fact that Sparks was paid to clean the prison while also receiving ADL2 assistance to clean his own cell. While a reasonable juror could conclude that Hunter's concerns with this apparent disconnect were valid, another could conclude that Hunter acted with deliberate indifference to Sparks' disability by removing him from a job he had demonstrated he was able to perform. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987) ("[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence.") (citation omitted).

For these reasons, the Court denies both motions for summary judgment on Sparks' ADA and Rehabilitation Act discrimination claims.

**B. Equal Protection Claim**

Sparks asserts equal protection claims under the Fourteenth Amendment against Hunter, Ortiz, and Thompson in their individual capacities pursuant to Section 1983.[2] (Compl. at 3.)

**1. Applicable Law**

The Equal Protection Clause of the Fourteenth Amendment instructs "that all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To establish an equal protection violation, an AIC must demonstrate that the defendants intentionally discriminated against him based on his membership in a protected class. *See Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (noting that to state an equal protection claim, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class") (citation omitted). Disability is not a "suspect class" for equal protection purposes. *See Lee*, 250 F.3d at 687 ("Because 'the disabled do not constitute a suspect class' for equal protection purposes, a governmental policy that purposefully treats the disabled differently from the non-disabled need only be 'rationally related to legitimate legislative goals' to pass constitutional muster.") (citations omitted).

Alternatively, an AIC may establish an equal protection violation by showing "that he was intentionally treated differently from other similarly situated inmates without a rational basis for such disparate treatment." *Dennison v. Waiawa Corr. Facility*, CIV. No. 16-00389

[2] Plaintiff clarifies in his response that he did not plead an Eighth Amendment claim and his only Fourteenth Amendment claim is for equal protection based on his disability, not a due process claim. (*See* Pl.'s Resp. at 5.)

JMS/KJM, 2016 WL 4419283, at *4 (D. Haw. Aug. 16, 2016) (citing, *inter alia*, *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).

**2. Analysis**

Sparks alleges that Defendants treated him differently than similarly situated AICs with respect to work assignments because he is legally blind and required an ADL2. (Compl. at 3; *see also* Pl.'s Br. at 4-5, citing specific examples of other AICs who were allowed to work despite requiring disability-related assistance). Defendants argue that Sparks "does not allege that he has been treated differently than other similarly situated inmates." (Defs.' Mot. at 8.)

For the same reasons discussed above, a reasonable juror could conclude that Defendants' reasons for removing Sparks from his job were rationally related to their goal of maintaining safety at TRCI and a reasonable juror could alternatively conclude that Defendants treated Sparks differently than similarly situated AICs for reasons not rationally related to the proffered safety goals. Accordingly, the Court denies both motions for summary judgment on Sparks' equal protection claim. *See T.W. Elec. Serv.*, 809 F.2d at 631 ("[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence.") (citation omitted).

**II. RETALIATION CLAIMS**

Sparks alleges that Hunter and Ortiz retaliated against him in response to his March 27, 2023 discrimination complaint by reducing his level of disability assistance on April 5, 2023. (*See* Pl.'s Br. at 11-12; Pl.'s Resp. at 4, ECF No. 77.) Sparks moves for summary judgment on

his ADA and Rehabilitation Act retaliation claims against ODOC and his First and Fourteenth Amendment retaliation claims against Hunter and Ortiz.[3] (Pl.'s Br. at 12.)

### A. Applicable Law

The ADA prohibits retaliation for or interference with assisting or testifying in connection with an ADA proceeding. *See* 42 U.S.C. § 12203(a)-(b). To establish a prima facie case of ADA retaliation, a plaintiff must demonstrate that (1) he was engaged in a protected activity; (2) suffered an adverse action; and (3) there was a causal link between the two. *See Brown v. City of Tucson*, 336 F.3d 1181, 1186-87 (9th Cir. 2003). If the plaintiff establishes a prima facie case, the defendant must offer legitimate reasons for the adverse action (*Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004)), and then the burden shifts to the plaintiff to demonstrate that the reasons offered are pretextual. *See Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001).

Submitting a complaint for disability discrimination is a protected activity. *See Pardi*, 389 F.3d at 850. Further, an action is adverse if it is "reasonably likely to deter [individuals] from engaging in protected activity." *Id.* Retaliatory intent may be inferred when an adverse action closely follows the engagement in a protected activity. *Id.* In the prison context, an AIC must demonstrate that the adverse action did not advance "any legitimate penological goal." *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam) (holding that an AIC alleging a retaliation claim must prove that the adverse action did not advance "any legitimate penological goal").

///

[3] Defendants did not move for summary judgment on Sparks' retaliation claims. Further, although Defendants argue that they are entitled to qualified immunity, they do not identify any clearly established law relating to Sparks' retaliation claims.

Similarly, a claim for First Amendment retaliation requires: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (citations omitted). A plaintiff must demonstrate that his protected conduct was a "substantial" or "motivating" factor behind the alleged retaliatory action. *See Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009). In addressing "the fifth factor, the Supreme Court has cautioned that 'federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment, especially with regard to the fine-tuning of the ordinary incidents of prison life, a common subject of prisoner claims.'" *Id.* (quoting *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995)).

**B. Analysis**

The record reflects that Hunter and Ortiz reduced Sparks' ADL2 level of assistance on April 5, 2023, shortly after Sparks filed his discrimination complaint. The record further reflects that they reduced Sparks' level of assistance only after Sparks represented that he no longer required daily assistance cleaning his cell, although Sparks now alleges that Ortiz coerced his statements to justify the removal of his ADL2 assistance. Viewing these facts in the light most favorable to Defendants, the Court finds that a reasonable juror could conclude that Defendants reduced Sparks' ADL2 level of assistance based on their reevaluation of his abilities, not in response to his discrimination complaint. *See Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) (holding that "[m]ere speculation that defendants acted out of retaliation" is "not sufficient") (citations omitted); *Pratt*, 65 F.3d at 808 (holding that timing alone is not determinative of retaliation). For these reasons, the Court denies Sparks' motion for summary judgment on his retaliation claims.

## III. LACK OF PERSONAL INVOLVEMENT

Defendants move for summary judgment on Sparks' claims against Reyes on the ground that Sparks fails to establish Reyes' personal involvement in the alleged constitutional deprivations. (Defs.' Mot. at 8-9.) Sparks refers to Reyes as "complicit" in violations of his rights. (Pl.'s Br. at 12-13.)

### A. Applicable Law

Section 1983 liability arises only upon a showing of personal participation by a defendant in the alleged constitutional deprivation. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("[L]iability under [Section] 1983 must be based on the personal involvement of the defendant.") (citation omitted); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (explaining that "[l]iability under [S]ection 1983 arises only upon a showing of personal participation by the defendant" in the alleged constitutional deprivation (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979))). Further, supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Taylor*, 880 F.2d at 1045 (noting that supervisors cannot be held liable for the acts of their subordinates under a respondeat superior theory of liability (citing *Ybarra v. Reno Thunderbird Mobile Home Vill.*, 723 F.2d 675, 680-81 (9th Cir. 1984))); *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 961 (9th Cir. 2010) (explaining that supervisory liability may be established under Section 1983 only "where the supervisor was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation" (quoting *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003))).

///

### B. Analysis

Sparks fails adequately to establish that Reyes, TRCI's superintendent, was personally involved in the alleged constitutional violations here. Sparks points only to a July 13, 2023 letter he received from Reyes in response to his discrimination complaint. (Pl.'s Br. at 13, citing Pl.'s Exs. Ex. 23.) The letter did not address Sparks' ADL2 assistance, and in the letter, Reyes agreed with Sparks that restoring his floor crew work assignment was the "[a]ppropriate action." (Pl.'s Exs. Ex. 23.) Reyes' letter does not reflect personal involvement in any alleged constitutional violation and Sparks presents no other evidence to support his speculation that Reyes was responsible for his original deprivation.

Because Sparks fails to present evidence of Reyes' personal involvement in the alleged constitutional violations, Reyes is entitled to summary judgment. Accordingly, the Court grants Defendants' motion for summary judgment on Sparks' claims against Reyes.

## CONCLUSION

For the reasons stated, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment (ECF No. 66) and DENIES Sparks' Motion for Summary Judgment (ECF No. 36). Sparks' claims against ODOC, Hunter, Thompson, and Ortiz will proceed to trial.[4]

**IT IS SO ORDERED.**

DATED this 21st day of September 2026.

Stacie F. Beckerman

HON. STACIE F. BECKERMAN
United States Magistrate Judge

[4] The Court notes that Sparks seeks, among other relief, reinstatement of AIC Stamper as his ADL2 and economic damages for the three months he was not allowed to work in his floor crew position. (*See* Pl.'s Relief Summ. J. at 1-3.) Upon request of the parties, the Court will refer the case to court-sponsored mediation or schedule a judicial settlement conference prior to setting a trial date.